UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
IN THE MATTER OF AN APPLICATION           MEMORANDUM
OF THE UNITED STATES OF AMERICA           AND ORDER
FOR AN ORDER AUTHORIZING THE
RELEASE OF HISTORICAL CELL-SITE           10-MC-0897 (JO)
INFORMATION.
-----------------------------------------------------------X

**JAMES ORENSTEIN, Magistrate Judge:**

The United States seeks an order pursuant to 18 U.S.C. § 2703(c)-(d) (the "SCA"), directing AT&T Wireless to disclose, with respect to all calls and text messages to and from a certain mobile telephone over a period of 113 days, all "recorded information identifying the base station towers and sectors that received transmissions from" a specified mobile telephone. Sealed Application at 1.[1] The government has proffered "specific and articulable facts showing that there are reasonable grounds to believe that the information sought is relevant and material to an ongoing criminal investigation." *Id*. ¶ 2. I deny the application without prejudice to the government's right to seek similar relief by means of an application for a search warrant pursuant to Federal Rule of Criminal Procedure 41 on the basis of a showing of probable cause.

As I have previously explained elsewhere, as a statutory matter, I interpret the SCA to permit the relief the government now seeks. *CSI: Brooklyn 2010*, --- F. Supp. 2d ----, 2010 WL 3463132, at *2 (E.D.N.Y. Aug. 27, 2010) (citing cases).[2] However, as further explained in *CSI: Brooklyn 2010*, I also conclude that granting the government's application would violate the Fourth Amendment. *See id*. at *3-14.

---

[1] I direct the government to file a suitably redacted version of its application on the docket.

[2] Because many of the decisions analyzing the issues before me have long titles that resist distinctive abbreviation, in the interest of brevity I will dispense with the full captions of such cases, and cite them using the following convention: "*CSI: [City of issuing court]*." Where further specification is needed, I will add to the shorthand name the year of the decision.

The government timely sought review of my decision in *CSI: Brooklyn 2010*. In a summary order issued on November 29, 2010, the Honorable Roslynn R. Mauskopf, United States District Judge, reversed the decision, granted the government's application, and noted that an explanatory opinion would follow. As of the date of this order, Judge Mauskopf has not yet issued that opinion. Even in the absence of an opinion, I am hesitant to do anything other than apply the ruling of an Article III Judge of this court to this essentially indistinguishable case.[3]

Nevertheless, for reasons I have explained elsewhere under similar circumstances, Judge Mauskopf's decision is not controlling authority, particularly where, as here, she is not the district judge currently on miscellaneous duty, to whom any review of this order will be assigned under this court's rules. Moreover, deferring to the decision of a single district judge on a matter normally litigated before a magistrate judge on an *ex parte* basis – and thus not subject to further review where the government's challenge to the magistrate judge's adverse decision is successful

---

[3] In both this case and *CSI: Brooklyn 2010*, the government sought access to historical cell site records pursuant to the SCA. In the earlier case, the government sought records for a period of 58 days from Sprint Nextel; here it seeks records from a different provider for a period almost twice as long. Those factual distinctions could make a difference in the appropriate outcome under some readings of the law. The longer period at issue here raises the possibility that the intrusiveness of the government's request is sufficiently greater than that in the earlier case to make the argument by analogy to *United States v. Maynard*, 615 F.3d 544 (D.C. Cir. 2010), stronger than it was in my previous decision. Differences between the two service providers (if any) in terms of the technology used to track a subscriber's location, the normal practices for retaining such information for business purposes, and the terms of the subscriber's service agreement might affect an analysis of the subscriber's reasonable expectation of privacy. Indeed, even considering the application solely under the terms of the SCA, such factual differences might affect the decision as to whether the court should exercise its discretion to require a showing of probable cause. *See CSI Pittsburgh*, 620 F.3d 304, 319 (3d Cir. 2010). For purposes of the instant application, however, I am prepared to assume that the analysis under both the SCA and the Fourth Amendment is the same here as it was in *CSI: Brooklyn 2010*. Should any reviewing court disagree with that analysis, I am of course prepared on remand to engage in the fact-intensive inquiry necessary to determine whether to exercise statutory discretion to insist on a probable cause showing under the SCA, *see CSI Pittsburgh*, 620 F.3d at 319; *CSI: Houston 2010,* --- F. Supp. 2d ----, 2010 WL 4286365, at * 2-6, and to determine the extent to which the subscriber has a reasonable expectation of privacy for purposes of the Fourth Amendment.

– would needlessly "freeze the development of the law in [this] district, and possibly in [this] circuit, in a way that would not be possible with respect to motions normally made in the first instance to a district judge." *In The Matter Of An Application Of The United States Of America For An Order Authorizing The Use Of A Pen Register And A Trap And Trace Device On Wireless Telephone Bearing Telephone Number [Redacted], Subscribed To [Redacted], Serviced By [Redacted]*, 2008 WL 5255815, at *1 (E.D.N.Y. Dec. 16, 2008).

Further, in the four months since my earlier decision on this issue, there have been several important developments in the case law, at least some of which were not before the court on review of my earlier decision. Although all of these intervening decisions were issued outside of this circuit, and thus are not controlling precedent, each informs my analysis and bolsters my conclusion that the instant application should be denied.

First, on September 7, 2010, a panel of the United States Court of Appeals for the Third Circuit issued its opinion vacating and remanding the decision in *CSI: Pittsburgh*, 534 F. Supp. 2d 585 (W.D. Pa. 2008), *aff'd on motion for reconsideration by district judge*, 2008 WL 4191511 (W.D. Pa. Sept. 10, 2008). *See CSI: Pittsburgh*, 620 F.3d 304 (3d Cir. 2010). In that case the magistrate judge had denied an application for historical cell site information on statutory grounds and also expressed constitutional doubt about the lawfulness of such a request under the Fourth Amendment. 534 F. Supp. 2d at 601. The district court affirmed. 2008 WL 4191511. The appellate panel concluded that the statute permits a magistrate judge considering a request for historical cell site records under the SCA to grant the request on a showing that does not rise to the level of probable cause. 620 F.3d at 313. The panel also held, however, that "the statute as presently written gives the [magistrate judge] the option to require a warrant showing probable cause" – albeit an option that should be exercised "sparingly[.]" *Id*. at 319. In addition, the

appellate panel appeared to reject the proposition that the Fourth Amendment is inapposite simply because the location records at issue are held by a third party service provider rather than by the subscriber whose movements they reflect, notwithstanding the Supreme Court's decision in *United States v. Miller*, 425 U.S. 435 (1976). 620 F.3d at 317-18.[4]

Second, on October 29, 2010, Magistrate Judge Stephen Wm. Smith issued a decision in *CSI: Houston 2010*, --- F. Supp. 2d ----, 2010 WL 4286365 (S.D. Tex. Oct. 29, 2010). Judge Smith agreed with my reasoning in denying a request similar to the one here, *see id*. at *10, but also relied on additional reasons. Specifically, after presenting a detailed and compelling description of the relevant technology and of the statistical measurements of the level of mobile telephone usage in our society, *see id*. at *2-6, Judge Smith demonstrated that granting the government access to the kinds of records at issue here reveals non-public information about constitutionally protected spaces. *Id*. at *6-7. He also refuted, far more persuasively than my earlier decision, the proposition that a mobile telephone user voluntarily exposes information about her location and therefore has no reasonable expectation of privacy in such records. *Id*. at *10-13.[5]

---

[4] The panel decision in *CSI: Pittsburgh* was issued during the pendency of the government's challenge to my earlier ruling. The government brought the decision to Judge Mauskopf's attention, pointing out the court's statutory analysis but omitting any mention of its apparent rejection of the government's reliance on *Miller*, which was a critical component of my analysis. In the absence of an opinion, I therefore do not know whether the court was aware of the latter aspect of the panel decision in reversing my order in *CSI: Brooklyn 2010*. More recently, on December 15, 2010 – after the issuance of the district judge's order in *CSI: Brooklyn 2010* – the appellate court denied the government's petition for panel rehearing and rehearing en banc in *CSI: Pittsburgh*.

[5] Although *CSI: Houston 2010*, like the appellate decision in *CSI: Pittsburgh*, was issued during the pendency of the government's challenge to my earlier ruling the government did not bring that decision to Judge Mauskopf's attention. In the absence of an opinion, I therefore do not know whether the court was aware of Judge Smith's decision in reversing my order in *CSI: Brooklyn 2010*. More recently – after the issuance of the district judge's order in *CSI: Brooklyn 2010* – the government has sought review of Judge Smith's decision in *CSI: Houston 2010*.

Third, on November 19, 2010, the United States Court of Appeals for the District of Columbia Circuit denied the government's petition for rehearing en banc in *United States v. Jones*, 625 F.3d 766 (D.C. Cir. 2010). That decision rejected the government's challenge to a panel decision in *United States v. Maynard*, 615 F.3d 544 (D.C. Cir. 2010). In *Maynard*, as set forth in my earlier decision, the court

> reversed the conviction of a defendant on the ground that evidence obtained in violation of his rights under the Fourth Amendment had improperly, and prejudicially, been admitted at trial. The investigating agents obtained such evidence by surreptitiously, and without a valid warrant, installing on the defendant's vehicle a global-positioning-system ("GPS") device that allowed them to track the location of that vehicle continuously for a month. *See United States v. Maynard*, [615 F.3d at 554-68]. In reaching its decision, the court explained in detail why it was not foreclosed by the result or the reasoning in [*United States v. Knotts*, 460 U.S. 276, 281 (1983)] – to the contrary, the court explained how the *Knotts* opinion had refrained from holding that *prolonged* warrantless location tracking was consistent with the Fourth Amendment. *See id*. at [556-57]; *see also* [*United States v.*] *Pineda-Moreno*, [617 F.3d 1120, 1124] (Kozinski, C.J., dissenting [from denial of rehearing en banc]) (similarly distinguishing *Knotts*).

*CSI Brooklyn 2010*, 2010 WL 3463132, at *2. In my earlier order, I explained why I believe that the rationale of *Maynard* is both persuasive and apposite to the kind of application here.[6]

Finally, on December 14, 2010, the United States Court of Appeals for the Sixth Circuit issued its decision in *United States v. Warshak*, --- F.3d ----, 2010 WL 5071766 (6th Cir. Dec. 14, 2010). In an earlier decision involving the same litigants, the court had noted that electronic communication "is as important to Fourth Amendment principles today as protecting telephone conversations has been in the past" and therefore opined that Warshak had a reasonable expectation of privacy in the content of his emails notwithstanding the fact that a third-party provider of internet communication services had access to those messages. *Warshak v. United*

---

[6] Although *Jones*, like the appellate decision in *CSI: Pittsburgh*, was issued during the pendency of the government's challenge to my earlier ruling, the government did not bring that decision to Judge Mauskopf's attention. In the absence of an opinion, I therefore do not know whether the court was aware of the *Jones* decision in reversing my order in *CSI: Brooklyn 2010*.

5

*States*, 490 F.3d 455, 473 (6th Cir. 2007). The court, sitting en banc, later vacated that panel decision on the ground that Warshak's request to enjoin the government from obtaining his emails in advance of an attempt by the government to do so was not ripe for review. *United States v. Warshak*, 532 F.3d 521, 526-27 (6th Cir. 2008). I nevertheless found the reasoning persuasive and relied on it in rejecting the government's argument that third-party access to cell site location records vitiated any reasonable expectation of privacy in such information. *See CSI: Brooklyn 2010*, 2010 WL 3463132, at *7.

In the recent decision in *Warshak*, the court again considered whether a third-party service provider's right of access to email communications extinguishes the subscriber's reasonable expectation of privacy in the content of such communications – and again held that it does not. In doing so, the court explicitly distinguished *Miller* as inapposite. 2010 WL 5071766, at *12-14. The court distinguished *Miller* in two ways: "First, *Miller* involved simple business records, as opposed to the potentially unlimited variety of 'confidential communications' at issue here…. Second, the bank depositor in *Miller* conveyed information to the bank so that the bank could put the information to use 'in the ordinary course of business.'" 2010 WL 5071766, at *13 (quoting *Miller*, 425 U.S. at 443).

I believe that location records can be distinguished for the same reasons. Location information is not a simple business record and, as convincingly explained in Maynard, it can effectively convey details that reveal the most sensitive information about a person's life – information that goes far beyond the ordinary course of the service provider's business. I recognize that reasonable minds can differ as to whether the *Warshak* court's precise reasons for distinguishing *Miller* apply with equal force to the case of cell site location records. Regardless of any such disagreement however, it is clear that in recognizing the viability of a subscriber's

reasonable expectation of privacy in email contents despite a third-party provider's access to them, the *Warshak* court embraced the same understanding of one of the "bedrock principles" that informed my earlier decision: "the Fourth Amendment must keep pace with the inexorable march of technological progress, or its guarantees will wither and perish." 2010 WL 5071766, at *10 (citing *Kyllo v. United States*, 533 U.S. 27, 34 (2001) (noting that evolving technology must not be permitted to "erode the privacy guaranteed by the Fourth Amendment")); *cf. CSI: Brooklyn 2010*, 2010 WL 3463132, at *14 ("The Fourth Amendment cannot properly be read to impose on our populace the dilemma of either ceding to the state any meaningful claim to personal privacy or effectively withdrawing from a technologically maturing society.").

In short, recent developments in pertinent case law have bolstered several different components of the analysis that previously led me to reject the government's reliance on the SCA to obtain records of a person's movements over a period of months without making a showing of probable cause. On the other side of the balance is the fact that a district judge of this court has disagreed with my conclusion for reasons that I am not now in a position to assess. Under these circumstances, I respectfully adhere to my prior analysis and the conclusion to which it led.

Accordingly, for the reasons set forth above and in my earlier decision in *CSI: Brooklyn 2010*, I deny the government's application without prejudice to its right to seek similar relief by means of an application for a search warrant pursuant to Federal Rule of Criminal Procedure 41 on the basis of a showing of probable cause.

**SO ORDERED.**

Dated: Brooklyn, New York
December 23, 2010

/s/ James Orenstein
JAMES ORENSTEIN
U.S. Magistrate Judge